No. 12-17026

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

MICHAEL T. O'BRIEN and ROBERT E. JACOBSEN,

Plaintiffs-Appellants,

v.

AURORA LOAN SERVICES, LLC, et. al.,

Defendants-Appellees.
_____

On Appeal from the United States District Court
for the Northern District of California
_____

## APPELLANTS' REPLY BRIEF

---

MICHAEL YESK (SBN 130056)

LAW OFFICES OF MICHAEL YESK

70 Doray Dr., Suite 16

Pleasant Hill, CA 94523

510-909-9700


ATTORNEY FOR APPELLANTS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………iv

I.    INTRODUCTION……………………………………………………..1

II.    A CONDITION PRECEDENT TO AURORA AND CAL-WESTERN FORECLOSING PURSUANT TO THE NOTE AND DEED OF TRUST IS THAT AURORA MUST FIRST BE A PROPER BENEFICIARY UNDER THE SAME………………………………………………………3

III.    THE UNDISPUTED FACTS SHOW AURORA WAS NOT A BENEFICIARY…………………………………………………………..5

    A.    THE TERM "BENEFICIARY" IN A DEED OF TRUST MEANS THE CREDITOR TO WHOM PAYMENT IS OWED……………6

    B.    THE PURPORTED ASSIGNMENT OF THE BENEFICIAL INTEREST IN THE DEED OF TRUST IS NOT SUFFICIENT EVIDENCE THAT AURORA IS A BENEFICIARY………………7

    C.    AURORA IS NOT A BENEFICIARY UNDER THE UCC………..9

    D.    AURORA IS NOT A BENEFICIARY UNDER THE COMMON LAW…………………………………………………………………11

    E.    AURORA WAS NOT A BENEFICIARY UNDER THE CIVIL CODE…………………………………………………………….14

IV.    THE NOTE AND DEED OF TRUST ARE VOID BECAUSE THE LENDER WAS NOT IDENTIFIED THEREIN…………………………...17

V.    APPELLANTS ARE NOT REQUIRED TO TENDER THE AMOUNT DUE UNDER THE LOAN…………………………………………...21

VI.    EVEN THOUGH TENDER WAS NOT REQUIRED, APPELLANTS TENDERED THE AMOUNT DUE UNDER THE PURPORTED LOAN AND THE SAME WAS REJECTED BY AURORA……………………..22

ii

VII.    APPELLANTS ARE NOT REQUIRED TO SHOW PREJUDICE
        RESULTING FROM THE VOID FORECLOSURE SALE……………..24

VIII.   APPELLANTS WERE PREJUDICED BY THE IRREGULARITY OF
        THE FORECLOSURE SALE…………………………………………26

IX.     THE LOWER COURT ERRED IN GRANTING SUMMARY
        JUDGMENT IN FAVOR OF AURORA ON APPELLANTS' QUIET
        TITLE CAUSE OF ACTION…………………………………………..29

X.      GENUINE ISSUES OF MATERIAL FACT EXISTED WITH
        REGARD TO APPELLANT O'BRIEN'S COMMON COUNT
        CAUSE OF ACTION PRECLUDING SUMMARY JUDGMENT………31

XI.     REGARDLESS OF WHETHER OR NOT THE NONJUDICIAL
        FORECLOSURE STATUTE ALLOWS A CREDIT BID TO BE
        PLACED AT A FORECLOSURE SALE, THE DEED OF TRUST
        AND NOTICE OF SALE CONTROLS THE STATUTE………………..33

XII.    APPELLANTS DO NOT LACK STANDING TO BRING THIS
        APPEAL DESPITE TITLE TO THE PROPERTY BEING DEEDED
        TO THEIR SUCCESSOR……………………………………………34

XIII.   THE LOWER COURT ERRED WHEN IT GRANTED
        CAL-WESTERN'S RULE 12(B)(6) MOTION WITHOUT LEAVE
        TO AMEND…………………………………………………………35

XIV.    CONCLUSION………………………………………………………37

CERTIFICATION OF COMPLIANCE WITH FRAP 32(A)…………………38

STATEMENT OF RELATED CASES…………………………………….38

CERTIFICATE OF SERVICE………………………………………….39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ............................1

*Adler v. Newell*, 109 Cal. 42, 48-49 (1895) ................................................................8

*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 209-210........................................................................................................................25

*Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248 ............................25

*Bank of America, N.A. v. La Jolla Group II*, 129 Cal.App.4th 706 (2005).............33

*Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984)................................1

*Bovard v. Dickenson*, 131 Cal. 162, 164 (1900)......................................................13

*Braxton-Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985)....................1

*Burkett v. Doty*, 176 Cal. 89, 93 (1917) ..................................................................14

Cal. Civ. Code, §953 ................................................................................................15

Cal. Civ. Code, §954 ................................................................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, Renhquist & Blackmun, JJ., dissenting) ....................................................................................2

*Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284 (1954......................................12

*Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954) ............................18

*Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954) ........................5, 16

*Cockerell v. Title Ins. & Trust Co*., 42 Cal. 2d at 291-292....................................13

*Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d at 293 ............................................12

*Creative Ventures, LLC v. Jim Ward & Associates*, 195 Cal. App. 4th 1430, 1447-1448 (2011) ..................................................................................................10

*Crocker-Woolworth Nat. Bank v. Carle*, 133 Cal. 409 (1901)................................11

*Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868 (2000).........................21

*Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868, 876 (2000)................21

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011) ..........5, 16

*Handyman Connection of Sacramento v. Sands*, 123 Cal. App. 4th 867, 888 (2004)..................................................................................................................19

*Higgins v. Graham*, 143 Cal. 131, 134 (1904) ......................................................13

*Hyde v. Mangan*, 88 Cal. 319, 327 (1891)................................................................9

*I. E. Associates v. Safeco Title Ins. Co*., supra, 39 Cal.3d 281, 287 ...................4, 35

In re Veal, 450 B.R. 897, 910-911 (B.A.P. 9th Cir. 2011) ......................................27

*In re Veal*, 450 B.R. 897, 915-916 (B.A.P. 9th Cir. 2011) ........................................9

*Johnson v. Razey*, 181 Cal. 342, 344 (1919)...........................................................9

*Kelley v. Upshaw,* 39 Cal. 2d 179, 192 (1952) .......................................................9

*Lawrence Nat. Bank v. Kowalsky*, 105 Cal. 41, 44 (1894) .....................................11

*Lewis v. Booth*, 3 Cal. 2d 345, 349 (1935)...........................................................8, 16

*Little v. CFS Service Corp.* 188 Cal. App. 3d 1354, 1358 (1987).........................21

*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098.........................................22

*Low v. Warden*, 70 Cal. 19, 20-21 (1886)...............................................................13

*Low v. Warden*, 70 Cal. 19, 21 (1886) ....................................................................13

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ..1

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, *supra*, 475 U.S. at 587
   (1986)....................................................................................................................2

*Matter of Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981)..............35

*McCown v. Spencer*, 8 Cal. App. 3d 216, 225 (1970) ...........................................15

*Nakagawa v. Okamoto*, 164 Cal. 718, 722 (1913)................................................13

*Nakagawa v. Okamoto*, 164 Cal. 718, 722-723 (1913) ........................................12

*Neale v. Head*, 133 Cal. 42, 46 (1901) ..................................................................11

*Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242
   (1987)............................................................................................... 5, 13, 16

*Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242-1243
   (1987)..................................................................................................................28

*Niederer v. Ferreira*, 150 Cal. App. 3d 219, 224 (1983). .....................................16

*Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1496 (1987) ..................................27

*Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1502-1503 n.2 (1987)....................16

*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424...................................................25

*Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th 1342 (1996) .....18

*Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th at 1344 .............19

*Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th at 1347 .............19

*Polhemus v. Trainer*, 30 Cal. 685, 688 (1866) ........................................................9

*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) ............................1

*Raspadori v. Cresta*, 130 Cal. 10, 11 (1900) ........................................................13

*Rauer v. Broder*, 107 Cal. 282, 284 (1895) ...........................................................13

*Read v. Buffum*, 79 Cal. 77, 80-81 (1889) .............................................................12

*Remington Investments, Inc. v. Moussa Nikbakht Hamedani*, 55 Cal.App.4th
   1033 (1997)...........................................................................................................5

*Rodgers v. Peckham*, 120 Cal. 238, 242 (1898) ........................................27

*Santens v. Los Angeles Finance Co.*, 91 Cal. App. 2d 197, 201 (1949)...................8

*Security Pacific Nat. Bank v. Chess*, 50 Cal.App.3d 555, 556 (1976) ...............5, 16

*Seidell v. Tuxedo Land Co.,* 216 Cal. 165, 171 (1932)...........................................14

*Tamburri v. Suntrust Mortgage, et. al.,* No. C-11-2899 EMC, 2011 WL
    6294472 (N.D. Cal. Dec. 15, 2011) ......................................................21

*Topanga Corp. v. Gentile*, 219 Cal.App.2d 274, 278 (1963)……………………  34

*Welton v. Adams & Co.*, 4 Cal. 37, 40 (1854) ........................................11

*Winnett v. Roberts* 179 Cal.App.3d 909 (1986)..........................................23

*Winnett v. Roberts*, 179 Cal.App.3d at 922 ..........................................24

## Statutes

Cal. Bus. & Prof. Code § 17910.5 ..........................................................17

Cal. Civ. Code § 955………………………………………………15, 28

Cal. Civ. Code § 1044 ..........................................................................18

Cal. Civ. Code § 1052 ..........................................................................18

Cal. Civ. Code § 1053 ..........................................................................18

Cal. Civ. Code §§ 1054 to 1056, 1066 to 1085 ....................................18

Cal. Civ. Code § 1084 .......................................................................15, 16

Cal. Civ. Code § 1427 ..........................................................................14

Cal. Civ. Code § 1428 ..........................................................................14

Cal. Civ. Code § 1458 ..........................................................................14

Cal. Civ. Code § 1459 ..........................................................................15

Cal. Civ. Code § 1488 ..........................................................................27

Cal. Civ. Code § 1504 ..........................................................................27

Cal. Civ. Code § 1558 .......................................................17, 18, 19, 20

Cal. Civ. Code § 1912 ..........................................................................14

Cal. Civ. Code § 1914 ..........................................................................14

Cal. Civ. Code §§ 2903, 2904 & 2905………………………………………24

Cal. Civ. Code § 2924 ....................................................................4, 7, 35

Cal. Civ. Code § 2924, ..........................................................................35

Cal. Civ. Code § 2924h(b) ....................................................................33

Cal. Civ. Code § 2924(a)(1) ....................................................................7

Cal. Civ. Code § 2924h(b) ..................................................................6, 7

Cal. Civ. Code § 2936 ......................................................................8, 16

Cal. Code Civ. Proc. § 762.060 ................................................................30
Cal. Code Civ. Proc. § 764.010 ................................................................29
Cal. Code Civ. Proc. § 2941…………………………………………………24

Cal. U. Com. Code § 1201, subd. (b)(21) ...................................... 10, 11
Cal. U. Com. Code § 3203, subd. (d)………………………………………..10
Cal. U. Com. Code § 3301 .............................................................. 10, 11
Cal. U. Com. Code §§ 3412, 3602, subd. (a)........................................27
Cal. U. Com. Code § 3418, subd. (b)....................................................27

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................35
Fed. R. Civ. P.  25 .................................................................................35
Fed. R. Civ. P. 25(c)………………………………………………… 34, 35
Fed. R. Civ. P. 56(c)……………………………………………………… 1

## Treatises

Cal. Jur. 3d, Bills & Notes, §§411 to 415, at 540-543 (2007)..................13
Miller & Starr, California Real Estate, (3d Ed.), § 10:4 .........................34
Miller & Starr, *"Show me your papers: Sales and Assignments of Secured
    Real Estate Loans and the California Foreclosure Process"*, Vol. 22,
    No. 3, January, 2012, Page 17 ..........................................................1
4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trusts &
    Mortgages, § 9.154, pp. 507-508………………………………………..25
Restatement (Third) of Property (Mortgages), §5:4 cmt.e (1997) ..........9

# I.    INTRODUCTION

In order to have properly prevailed in its summary judgment motion, Aurora had the burden of proving that there was no genuine dispute of material fact and that it was entitled to judgment as a matter of law.[1]  Simply because the facts are undisputed does not make summary judgment appropriate.  Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper.[2]  Also, summary judgment is proper only if the evidence in the record could not lead a finder of fact to find in the non-moving parties' favor.[3]  Finally, in assessing the facts in the record, the court should make all reasonable inferences in the favor of the non-moving party.[4]

As a party not bearing the burden of persuasion at trial, there were two ways Aurora could have properly discharged its burden of proof.  In order to show entitlement to judgment as a matter of law, Aurora had to either 1) produce

---

[1] Fed. R. Civ. P. 56(c); see also *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).
[2] See *Braxton-Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (9th Cir.1985).
[3] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").  It follows that the converse must be true:  where the record taken as a whole could lead a rational trier of fact to find for the non-moving party, there is a genuine issue for trial.
[4] *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984) ("Summary judgment is appropriate…if viewing the evidence in the light most favorable to the opposing party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law").

evidence that negated an element of Appellants' claim(s) or 2) show that Appellants did not have enough evidence of an element of their claim(s) to carry their burden of persuasion at trial.[5]  Here, Aurora had neither produced evidence that negated an element of Appellants' claims nor had shown Appellants did not have enough evidence of an element of their claims.

After being on notice since the beginning of this lawsuit that Appellants contended it was not a proper beneficiary,[6] Aurora has still has not shown that a reasonable juror could not conclude it wasn't a beneficiary entitled to foreclose.[7] In that regard, Aurora's employee, Kirsten Trompisz, alleged that Aurora possessed the note <u>after</u> foreclosure already occurred and alleged that Aurora paid cash for the property at the trustee's sale by virtue of a notation in a trustee's deed which also noted, contradictorily, that $0.00 transfer tax was paid by Aurora.[8]  A reasonable juror could conclude from such evidence that Aurora was acting like a beneficiary since it placed a credit bid on the property, but wasn't actually a beneficiary because it was unclear if they possessed the note during foreclosure.[9]

---

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, Renhquist & Blackmun, JJ., dissenting).

[6] Aplt. ER at 453-462; Id, at 58.

[7] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, *supra*, 475 U.S. at 587 (1986). Aplt. ER at 181, 237.

[8] Aplt. ER at 181, 237.

[9] Matsushita Elec. Industrial Co. v. Zenith Radio Corp., supra, 475 U.S. at 587 (1986); Aplt. ER at 181, 237. Appellants discuss what a beneficiary is and how Aurora is not a beneficiary in Argument III below.

Given that Aurora has now – for the first time – admitted it acquired the property with a credit bid,[10] but without showing itself to be a beneficiary entitled to do so,[11] a reasonable juror could properly conclude that Aurora and Cal-Western are liable to Appellants for wrongful foreclosure and cancellation of instruments and that Appellants should be granted quiet title against Aurora.

Finally, absent Aurora providing evidence that it had an agency agreement with the actual beneficiary to collect loan payments for it or that it is a person entitled to enforce the note, a reasonable juror could find that all payments received by it from Appellant O'Brien should properly be returned to him under the common count claim.

## II. A CONDITION PRECEDENT TO AURORA AND CAL-WESTERN FORECLOSING PURSUANT TO THE NOTE AND DEED OF TRUST IS THAT AURORA MUST FIRST BE A PROPER BENEFICIARY UNDER THE SAME

Aurora could not foreclose on the property herein without first being a proper beneficiary entitled to enforce the note (acquiring the property with a credit bid),[12] or must at least be the authorized agent of the beneficiary[13] (directing the

---

[10] Aurora's Answering Brief at 34, 39-40. The fact that Aurora actually submitted a credit bid, rather than cash, was admitted by its agent Cal-Western in the case below; however, now they take the opposite position. See Aplt. ER at 377, 405; compare Cal-Western's Response Brief at 6, 7 (footnote).

[11] Aplt. ER at 181, 237.

[12] Cal. Civ. Code 2924h(b)("The present beneficiary of the deed of trust under foreclosure shall have the right to offset his or her bid or bids only to the extent of the total amount due the beneficiary including the trustee's fees and expenses.").

trustee to file a notice of default).  The plain meaning of the statute indicates that only a beneficiary may acquire a property with a credit bid pursuant to a deed of trust with a power of sale.[14]  Therefore, actually being a beneficiary (not just filing a document in which one purports to be a beneficiary) is a prerequisite to a regular nonjudicial foreclosure proceeding.  Here, despite Appellants contending Aurora was not a beneficiary below,[15] Aurora has proffered insufficient evidence that it really is the beneficiary.[16]

Additionally, Cal-Western, as the purported trustee under the deed of trust, was constrained to act only on behalf of the actual beneficiary in conducting the foreclosure below as a condition precedent of its authority in doing so.[17]

As indicated below, neither Aurora nor Cal-Western had the authority to foreclose on the property because Aurora was not a beneficiary within the meaning of California's nonjudicial foreclosure law.[18]

---

[13] Cal. Civ. Code 2924(a)(1)("The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default.").

[14] Cal. Civ. Code 2924h(b).

[15] Aplt. ER at 453-462; Id, at 58.

[16] Aplt. ER at 181, 237; Appellants discuss what a beneficiary is and how Aurora is not a beneficiary in Argument III below.

[17] *I. E. Associates v. Safeco Title Ins. Co*., supra, 39 Cal.3d 281, 287. ("The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.").

[18] Cal. Civ. Code § 2924, et. seq.

## III.    THE UNDISPUTED FACTS SHOW AURORA WAS NOT A BENEFICIARY

In stark contrast to Aurora's assertion that Appellants have contended they were not a proper beneficiary for the first time on appeal,[19] Appellants' complaint repeatedly claimed Aurora was a non-beneficiary and also did so in its opposition to Aurora's cross motion for summary judgment below.[20]  Aurora seems to suggest that it is the beneficiary under the deed of trust simply because the one named in the deed of trust as beneficiary appeared to have assigned its interest to it.[21] However, simply being named beneficiary in the deed of trust does not make one such a beneficiary.  Upon Appellants denying Aurora's status as a beneficiary, Aurora had the burden of proving it was such a beneficiary.[22]

---

[19] Aurora's Answering Brief at 33.
[20] Aplt. ER at 453-462; Id, at 58.
[21] Aurora's Answering Brief at 34.
[22] See *Remington Investments, Inc. v. Moussa Nikbakht Hamedani*, 55 Cal.App.4th 1033 (1997) (when debt is denied the burden of proof shifts to the one claiming the debt is owed to him); *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954); *Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242 (1987); *Security Pacific Nat. Bank v. Chess*, 50 Cal.App.3d 555, 556 (1976). See *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011).

If it did not have such a burden it would place Appellants in the position of having to prove a negative, the evidence of which (or lack thereof) is in the knowledge, possession and control of Aurora.[23]

## A. THE TERM "BENEFICIARY" IN A DEED OF TRUST MEANS THE CREDITOR TO WHOM PAYMENT IS OWED

California's non-judicial foreclosure legislative scheme does not offer a definition of beneficiary, yet what is clear, by its very terms, is that a beneficiary entitled to place a credit bid is the one to whom a debt secured by the property is owed.[24]  This language makes it clear that the term "beneficiary" means the one to whom payment is owed and does not allow for an agent of a beneficiary to act in its stead (in acquiring a property at trustee's sale by credit bid).  Under long standing California law, the term "beneficiary" under a deed of trust means the creditor (the one who lent money and is entitled to be paid).[25]

_____

[23] No discovery occurred in the case below prior to Appellants moving for partial summary judgment on the part of their quiet title claim that the note and deed of trust were void because lender did not possess the capacity to contract.  Aplt. ER at 418.  Aurora swiftly cross moved for summary judgment on Appellant's entire complaint prior to discovery commencing.  Aplt. ER at 125.

[24] Cal. Civ. Code § 2924h(b) ("The present beneficiary of the deed of trust under foreclosure shall have the right to offset his or her bid or bids only to the extent of the total amount due the beneficiary including the trustee's fees and expenses (emphasis added")).

[25] "In California, the security instrument is most commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a neutral third party known as trustee). The security instrument may also be a mortgage (with mortgagor and mortgagee, as participants). In either case, the creditor is said to have a lien on the property given as security, which is also referred to as

6

Some courts have interpreted California's non-judicial foreclosure legislative scheme as a comprehensive one that has abrogated the common law.[26] Notably, some courts have found that, regardless of the fact that the notes common to virtually all of California's real estate transactions are negotiable instruments governed under the California Uniform Commercial Code ("UCC"), that the UCC is inapplicable to such non-judicial statutory foreclosure scheme.[27]  Regardless of whether or not the UCC applies and whether or not Cal. Civ. Code § 2924, et. seq., has abrogated the common law, the term "beneficiary" means the actual creditor who funded a secured loan or gave value to acquire an enforceable interest in the debt.

## B.    THE PURPORTED ASSIGNMENT OF THE BENEFICIAL INTEREST IN THE DEED OF TRUST IS NOT SUFFICIENT EVIDENCE THAT AURORA IS A BENEFICIARY

Here, Aurora stands on the deed of trust to which it says it acquired a beneficial interest from MERS via a "corporate assignment of deed of trust" as proof that it is a beneficiary.[28]  However, it is clear that such an assignment without the transfer of an entitlement to enforce the note is a nullity.[29]

---

collateral."  Bernhardt, *Cal. Mortgage and Deed of Trust Practice* (Cont.Ed.Bar 2d ed. 1990) § 1.3, p. 5, italics removed.

[26] *I. E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985).

[27] *Castaneda v. Saxon Mortgage Services*, Inc., 687 F.Supp.2d 1191 (2009).

[28] Aurora's Answering Brief at 11, 32.

[29] "…the recording of an assignment of a mortgage only provides notice to subsequent purchasers or encumbrancers; it does not operate to deprive the true

In fact, it is black letter law that "the security follows the debt."[30]  In other words, a transfer of the debt instrument automatically carries with it the security,[31] and a separate assignment of the mortgage[32] or deed of trust[33] is not necessary if the note has been properly transferred.  The other principle is that a purported assignment of the security is void and ineffective unless accompanied by an assignment of the note, and the purported assignment or delivery of possession of the mortgage or deed of trust without a transfer of the obligation secured is either

---

holder of the indebtedness of the ownership either of the debt or the security, or to give the assignee a right to foreclose the security.  To the contrary, an off-record assignment of the note carries with it the security interest under a mortgage or deed of trust, and a later recorded assignment of the trust deed does not take precedence over the prior off-record assignment of the note." Miller & Starr, *"Show me your papers: Sales and Assignments of Secured Real Estate Loans and the California Foreclosure Process"*, Vol. 22, No. 3, January, 2012, Page 17.

[30] Cal. Civ. Code, §2936 ("The assignment of a debt secured by mortgage carries with it the security"); *Lewis v. Booth*, 3 Cal. 2d 345, 349 (1935).

[31] Id.

[32] *Adler v. Newell*, 109 Cal. 42, 48-49 (1895).

[33] *Lewis v. Booth*, 3 Cal. 2d 345, 349 (1935); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932) (whereas *Lewis v. Booth* relies upon Civ. Code, §1084 to the effect that the transfer of a thing transfers all of its "incidents," and the lien of a deed of trust is one these "incidents;" *Seidell* relies upon Civ. Code, §2936, even though §2936 refers only to an assignment of a debt secured by a mortgage, not one secured by a deed of trust). See also *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954); *Santens v. Los Angeles Finance Co.*, 91 Cal. App. 2d 197, 201 (1949) ("the transfer of the note carried with it the security"—here a deed of trust).

completely ineffective and a legal nullity,[34] or else operates to extinguish the security interest, rendering the note unsecured.[35]

Therefore, the assignment of the beneficial interest in the deed of trust pointed to by Aurora to show it had superior title to Appellants, coupled with the proof in the record that Aurora owns no interest in the loan and the dearth of proof that Aurora was a holder of the note, indicates Aurora has failed to carry its initial burden of proof on its cross motion for summary judgment. Aurora has shown neither Appellants' lack of evidence of their claims nor that a reasonable juror could not conclude it was not a beneficiary entitled to foreclose. Therefore, the lower court erred in granting summary judgment to Aurora.

## C.    AURORA IS NOT A BENEFICIARY UNDER THE UCC

Below, it was clear Aurora did not produce evidence from which a reasonable juror could conclude it was a proper beneficiary to acquire the property with a credit bid at the trustee's sale under the UCC.

---

[34] *Kelley v. Upshaw,* 39 Cal. 2d 179, 192 (1952) (mortgage); *Hyde v. Mangan*, 88 Cal. 319, 327 (1891); *Polhemus v. Trainer*, 30 Cal. 685, 688 (1866). See *Johnson v. Razey*, 181 Cal. 342, 344 (1919).

[35] Restatement (Third) of Property (Mortgages), §5:4 cmt.e (1997) states: "In general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation." Accordingly, [w]hen a note is split from a deed of trust, "the note becomes as a practical matter unsecured." *In re Veal*, 450 B.R. 897, 915-916 (B.A.P. 9th Cir. 2011).

Cal. U. Com. Code § 3301 details who may enforce a note.[36]  Here, Aurora has not produced evidence that it was a holder of the note during foreclosure because it has not shown it possessed the note during the foreclosure and has also not produced sufficient evidence that it could otherwise enforce the note.[37]  Aurora has not produced sufficient evidence that it was the owner – or even the holder of the note – and thus lacks the authority to enforce the same via foreclosure.  Aurora has stated it was a mere servicer of the loan and <u>never</u> owned it.[38]

Furthermore, while Aurora contends that it was the holder of the note,[39] there is insufficient evidence in the record that Aurora possessed the note during the foreclosure process.[40]  That Aurora may have at some point been in possession

---

[36] 3301.  PERSON ENTITLED TO ENFORCE INSTRUMENT. "Person entitled to enforce" an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[37] Cal. U. Com. Code, §1201, subd. (b)(21).

[38] Aplt. ER at 136-137.

[39] Aurora's Answering Brief at 34, 39-40.  To the extent that Aurora contends it acquired a partial interest in the note (Aplt. ER at 137), such a status prevents it from being a holder.  See *Creative Ventures, LLC v. Jim Ward & Associates*, 195 Cal. App. 4th 1430, 1447-1448 (2011), review denied, (Aug. 10, 2011).  See also Cal. U. Com. Code, §3203, subd. (d).

[40] Page 39 of Aurora's Answering Brief suggests for the first time that it was the holder of the note pre-foreclosure.   In support of such contention, Aurora cited pages 186-195 of Appellants' Excerpts of Record which was part of the exhibits to the Declaration of Kristen Trompisz in support of Aurora's cross-motion for summary judgment below, consisting of a copy of the note.  However, producing a

of the note is insufficient to prove it was the holder of the note and entitled to enforce it during the foreclosure of the property. There is no evidence that Aurora possessed the note at the time it acquired the trustee's deed with a credit bid. Finally, there is no evidence that Aurora was a non-holder in possession of the note entitled to enforce it by foreclosing on the collateral.

### D.    AURORA IS NOT A BENEFICIARY UNDER THE COMMON LAW

Since long before the adoption of the California version of the Uniform Commercial Code, the California Supreme Court has held that proof of a negotiable instrument by the payee was an essential element of an action to enforce the debt.[41] On this authority, parties seeking to recover on a note must allege and be prepared to prove ownership of the instrument.[42]

---

copy of the note is insufficient proof that Aurora had the original note in its possession during the foreclosure. The declaration to which these exhibits are attached is more informative about possession of the original note, stating "Aurora is currently in possession of plaintiff's original promissory note (emphasis added)." (Aplt. ER at 181). That one sentence is the only evidence in the proceedings below that gives any indication of who possessed the note and when. However, the trustee's sale completing the foreclosure of the property occurred on September 13, 2011, while the declaration asserting current possession of the note was dated over seven months later. (Aplt. ER at 182). Aurora could only have been a beneficiary if it possessed the note during the foreclosure or was otherwise entitled to enforce the note. Cal. U. Com. Code, § 1201, subd. (b)(21); Cal. U. Comm. Code § 3301.

[41] *Welton v. Adams & Co.*, 4 Cal. 37, 40 (1854).

[42] See *Crocker-Woolworth Nat. Bank v. Carle*, 133 Cal. 409 (1901); *Neale v. Head*, 133 Cal. 42, 46 (1901); *Lawrence Nat. Bank v. Kowalsky*, 105 Cal. 41, 44 (1894).

The leading case, *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284 (1954), is instructive on how an assignee must prove it is a beneficiary entitled to enforce the note.  In *Cockerell*, the California Supreme Court enunciated the requirement that an assignee must prove not only the due assignment of the instrument on which he or she seeks to collect, but also, in the case of a purported assignment by the legal entity that was the original payee and beneficiary of a deed of trust, that the payee legally existed and the purported agent who executed the indorsement of the note on its behalf was in fact authorized to do so.[43]  In *Cockerell*, the Court refused to allow the alleged holder of a third deed of trust to participate in surplus proceeds realized from a sale of the property under the senior debt, on the basis that the alleged holder of the junior note who had introduced the original note into evidence failed to show how the persons who delivered it to her were authorized to indorse it on behalf of a "company" whose legal existence and identity were not established by the evidence.[44]

Thus, even though the claimant necessarily must allege and prove the right to enforce the obligation (and if the claimant is not the original payee, must at least allege that the instrument has been assigned), the issue of proof depends on whether the defendant contests the validity of the obligation or of the assignment.

[43] *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d at 293.

[44] *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d at 293; To the same effect, see *Read v. Buffum*, 79 Cal. 77, 80-81 (1889), and *Nakagawa v. Okamoto*, 164 Cal. 718, 722-723 (1913).

If the defendant admits the claim, or fails to raise infirmities in the assignment as a defense, the plaintiff need not introduce specific evidence of validity of the assignment or that he is the holder of the indebtedness; but if validity is denied, the plaintiff must produce the note and any requisite indorsement as evidence.[45] Once the defendant contests validity of the debt,[46] or of the assignment,[47] the burden shifts to the plaintiff to introduce competent evidence of both.

Here, Appellants have consistently challenged the status of Aurora as beneficiary below,[48] and, consequently, any purported assignment to Aurora and any debt that such a transfer may have been based upon.

In the case of a debt instrument, production of the instrument and, if required by substantive law, its negotiation to the claimant, is sufficient to satisfy claimant's burden,[49] subject to any allegations of fraud, lack of due indorsement or other defenses that may be asserted and proven by the purported debtor.[50] The same general principles apply to the assignment of the security instrument, subject to the

---

[45] *Rauer v. Broder*, 107 Cal. 282, 284 (1895); *Low v. Warden*, 70 Cal. 19, 21 (1886).

[46] *Higgins v. Graham*, 143 Cal. 131, 134 (1904). See *Raspadori v. Cresta*, 130 Cal. 10, 11 (1900); *Rauer v. Broder*, 107 Cal. 282, 284 (1895).

[47] *Cockerell v. Title Ins. & Trust Co*., 42 Cal. 2d at 291-292; *Nakagawa v. Okamoto*, 164 Cal. 718, 722 (1913); *Bovard v. Dickenson*, 131 Cal. 162, 164 (1900); *Low v. Warden*, 70 Cal. 19, 20-21 (1886); *Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242 (1987).

[48] Aplt. ER at 453-462; Id, at 58.

[49] Rauer v. Broder, 107 Cal. 282, 284 (1895).

[50] See, generally, Cal. Jur. 3d, Bills & Notes, §§411 to 415, at 540-543 (2007).

supervening rule that an assignment of the debt carries with it the assignment of the security.[51]

Here, Aurora has neither produced the original note nor has it proved the validity of any assignment of the note to it. As under the UCC, Aurora has failed to show the evidence could not lead a reasonable juror to conclude it was not the beneficiary under the deed of trust. Accordingly, it was error for the lower court to grant summary judgment in its favor.

### E. AURORA WAS NOT A BENEFICIARY UNDER THE CIVIL CODE

Under the Civil Code, an "obligation" is a legal duty to do or not do a certain thing,[52] and may be created or imposed by contract or the operation of law.[53] The rights of the person to whom performance of the obligation is due (i.e., the obligee) are the property of the obligee and may be transferred by him or her.[54] A loan of money, as defined in the Civil Code,[55] includes an obligation arising from a written

---

[51] *Seidell v. Tuxedo Land Co.,* 216 Cal. 165, 171 (1932); *Burkett v. Doty*, 176 Cal. 89, 93 (1917).

[52] Cal. Civ. Code, §1427.

[53] Cal. Civ. Code, §1428.

[54] Cal. Civ. Code, §1458.

[55] Cal. Civ. Code, §1912 defines a "loan of money" as "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." A loan is always presumed to bear interest unless otherwise expressly stipulated in writing at the time. Cal. Civ. Code, §1914.

contract for the payment of money and may be transferred by "indorsement" even if the obligation is non-negotiable.[56]

If a contract right or other personal property is transferred, it can be done by a bill of sale and is governed by the rules applicable to grants generally.[57]  A claim for money enforceable by judicial action[58] whether it arises out of a tort or out of an obligation,[59] may be transferred by indorsement or by a written assignment and without notice to the obligee, but the indorsement, delivery or assignment is not, in and of itself, sufficient to give notice to the obligor so as to invalidate any payments made by him to the transferor.[60]

Beyond this, the Civil Code provides no specific method for assignment of the obligee's rights to an obligation created by contract.  Any type of property may be "transferred" except as otherwise provided by law.[61]  Property generally may be transferred without a writing, unless a writing is expressly required by law.[62]

Under Cal. Civil Code, §1084, when something is transferred, the transfer includes "all its incidents," but a transfer of only one of the "incidents of a thing"

---

[56] Cal. Civ. Code, §1459.
[57] Cal. Civ. Code, §1053; See Cal. Civ. Code, §§1054 to 1056, 1066 to 1085; See also *McCown v. Spencer*, 8 Cal. App. 3d 216, 225 (1970).
[58] Cal. Civ. Code, §953 defines a "thing in action" as "a right to recover money or personal property by a judicial proceeding."
[59] Cal. Civ. Code, §954.
[60] Cal. Civ. Code, §955.
[61] Cal. Civ. Code, §1044.
[62] Cal. Civ. Code, §1052.

does not accomplish a transfer of the thing itself.[63]  This has been held to mean, in the context of a note secured by a mortgage, that the assignment of the note carries with it the beneficial interest under a deed of trust that secures it, even without a separate assignment of the deed of trust, recorded or not.[64]  Among other things, a mere assignee of an indebtedness ordinarily bears the burden of proof to show the validity of the assignment in an action to collect the debt.[65]

Again, like under the common law and the UCC, the enforcement of a debt under the California Civil Code requires an assignee of a debt to assume the burden of proof to show the validity of the assignment of the debt.  Also, like the common law and the UCC, the transfer of an incident of the debt, such as the deed of trust here, without the transfer of the note is a nullity.

Here, Aurora has again failed to show there is no evidence from which a reasonable juror may find Aurora was not a beneficiary entitled to foreclose since

---

[63] Cal. Civ. Code, §1084.  See also Cal. Civ. Code, §2936 ("The assignment of a debt secured by a mortgage carries with it the security.").

[64] *Lewis v. Booth*, 3 Cal. 2d 345, 349 (1935) (defective acknowledgement of assignment of deed of trust did not impair effectiveness of indorsement of the note as transferring both the debt and the security).  In *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1502-1503 n.2 (1987) an assignment (without indorsement) of a promissory note was held to also assign a guaranty of the note. See also *Niederer v. Ferreira*, 150 Cal. App. 3d 219, 224 (1983).

[65] *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954); *Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242 (1987); *Security Pacific Nat. Bank v. Chess*, 50 Cal.App.3d 555, 556 (1976). See *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011).

Aurora admitted it never owned the debt and has failed to show it acquired the right to enforce it.

## IV.    THE NOTE AND DEED OF TRUST ARE VOID BECAUSE THE LENDER WAS NOT IDENTIFIED THEREIN

In its Answering Brief, Aurora misapprehends Appellants' contention that the lender was not identified in the note and deed of trust.  While Aurora relies on the fictitious business name law to contend the lender was identified,[66] it does not address the fact that the purported lender in the case below, "Direct Funding" was stated to be a California Corporation, in and of itself, in the legally operative loan documents (note and deed of trust).  While the owner of the dba may have been a valid California Corporation, it is clear that "Direct Funding, A California Corporation", the entity actually noted as lender on both the note and deed of trust, did not exist.  Moreover, the Legislature appears to have recognized the difficulty presented in identifying an entity such as "Direct Funding, A California Corporation" because it prohibited dba's from having such a suffix.[67]

That "Direct Funding" may have been the dba of a California Corporation does not show the note and deed of trust met the prerequisite of a valid contract under Cal. Civ. Code §1558.  While a corporation may "do business" under a dba,

---

[66] Aurora's Answering Brief at 20 & 24.

[67] Cal. Bus. & Prof. Code § 17910.5 ("No person shall adopt any fictitious business name which includes "Corporation," "Corp.," "Incorporated," or "Inc." unless that person is a corporation organized pursuant to the laws of this state or some other jurisdiction.").

in order to comply with Cal. Civ. Code §1558 a contract should indicate the owner of the dba within such a legally operative document such as a promissory note or deed of trust (i.e., "XYZ, doing business as ABC").  Moreover, misrepresenting that a particular dba is actually – in and of itself – a corporation, where there are no articles of incorporation filed for such an entity, adds another layer of obscurity to the actual identity of a counterparty to a contract.

Here, Aurora claims that the lender was disclosed in a document within the closing file.[68]  However, that was really a corporation in its capacity as mortgage broker – not lender.  Aurora does not explain why a homeowner would think its mortgage broker was also its lender, or why a homeowner would search for who owns the dba of its mortgage broker to find out who its lender is.

More importantly, Aurora does not counter Appellants' contention that, in order for a contract to meet the prerequisites of a valid contract under Cal. Civ. Code §1558, it must be identified within the contract.  With dozens of counties in California, a homeowner should not be forced to search the dba records of each of them (which may contain the same dba registered to a different corporation in each of those counties) to identify his lender.

Furthermore, Aurora's reliance on *Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th 1342 (1996) is misplaced.  *Pinkerton's* was a

---

[68] Aurora's Answering Brief at 25-26.

personal injury lawsuit[69] in which there was considerable confusion about the identity of the security firm who was responsible for plaintiff's injuries.[70]  It was not a contract case in which plaintiffs were asserting their counterparty was unidentified.  While the *Pinkerton's* Court did find that a dba of a corporation is indistinguishable from the corporation itself,[71] it did not consider whether a contract naming only a dba without noting its owner complied with the identification prerequisite to contract formation of Cal. Civ. Code § 1558.  Neither did it consider the confusing designation of a dba as a "California Corporation" in and of itself.  In short, *Pinkerton's* is so far off point that it's of little authority in the instant case.

Moreover, Aurora's reliance on *Handyman Connection of Sacramento v. Sands*, 123 Cal. App. 4th 867, 888 (2004) is also misplaced.  *Handyman* concerned a disciplinary proceeding against a licensed contractor for allegedly contracting under a different name than that under which it was licensed ("working out of name-style").

*Handyman* is distinguishable in several ways.  First, it did not concern a contract in which a party was a dba masquerading as a California Corporation, as is the case here; rather, it concerned the use of an name abbreviated from the name in

---

[69] *Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th at 1344.
[70] Id.
[71] *Pinkerton's, Inc. v. Superior Court (Schrieber),* 49 Cal. App. 4th at 1347.

which the contractor was licensed (and incorporated).  Second, the *Handyman* Court did not have occasion to consider the validity of a contract using an assumed name, but rather, the issue ruled upon was whether the use of a name other than the one the contractor was licensed under was cause for discipline.  Third, *Handyman* did not even consider whether contracting under a dba wholly different in name than the owner of the dba would have been cause for discipline; rather, *Handyman* held that contracting under the abbreviated name of "Handyman Connection", as opposed to the licensed name of "Handyman Connection of Sacramento, Inc.", constituted substantial compliance with the statute requiring contractors to contract under their licensed name.  Finally, *Handyman* simply did not deal with the issue of whether or not the contract sufficiently identified the parties under Cal. Civ. Code § 1558.

    In short, *Handyman*, like *Pinkerton's*, is simply not on point.  Appellants have no knowledge of a case that considered whether or not contracting under a dba in a legally operative document that is not an abbreviated form of the name of its parent corporation, contains no indication of the parent corporation's legal name *and* purports to be a corporation in and of itself complies with the prerequisite to a valid contract that the parties should be capable of being identified therein.[72]

---

[72] Cal. Civ. Code § 1558.

Since only a dba of completely different name than its corporate owner yet disguised as a corporation in and of itself was identified within the note and deed of trust, a genuine issue of material fact existed as to whether those instruments were void for failure to comply with a prerequisite of a valid contract.

## V.    APPELLANTS ARE NOT REQUIRED TO TENDER THE AMOUNT DUE UNDER THE LOAN

Aurora seems to suggest that a tender is always required to set aside a foreclosure sale.[73]  However, it is well recognized that many exceptions to the tender rule exist.[74]  Among these exceptions are that tender is not required where a foreclosure sale is void.[75]  In *Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868 (2000), the court found the foreclosure sale was void because, after a new trustee was substituted by the beneficiary for the former trustee, the former trustee

---

[73] Aurora's Answering Brief at 36.

[74] *Tamburri v. Suntrust Mortgage, et. al.,* No. C-11-2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011).

[75] *Dimock v. Emerald Properties LLC,* 81 Cal. App. 4th 868, 876 (2000) (holding that where the incorrect trustee had foreclosed on a property and conveyed it to a third party, the conveyed deed was not merely voidable, but void (where trustee's deed did not include a conclusive presumption of regularity)); see also *Little v. CFS Service Corp.* 188 Cal. App. 3d 1354, 1358 (1987)("The general rule in the United States on voidness or voidability of sale is set out in 55 American Jurisprudence Second: '[D]efects and irregularities in a sale under a power render it merely voidable and not void .... However, <u>substantially defective sales have been held void where the defect lay in a particular as to which the statutory provision was regarded as mandatory</u> ...' (55 Am.Jur.2d, Mortgages, § 746, p. 673.)(emphasis added)").  Here, it is mandatory that only a beneficiary may acquire a property at a trustee's sale with a credit bid.

nonetheless conducted the foreclosure.  Because only a trustee under California's

nonjudicial foreclosure law is authorized to conduct the foreclosure, the *Dimock*

court found the sale to be void, as opposed to merely voidable, and, thus, tender

was not required.[76]

As in *Dimock,* where a party falsely claiming to be a trustee voided the sale,

here, a party falsely claiming to be a beneficiary (Aurora) has voided the

foreclosure sale.[77]  Consequently, tender is not required. It would be absurd to

require tender to Aurora when Aurora has admitted it doesn't own the debt and has

otherwise failed to show it is entitled to enforce the note.

## VI.   EVEN THOUGH TENDER WAS NOT REQUIRED, APPELLANTS TENDERED THE AMOUNT DUE UNDER THE PURPORTED LOAN AND THE SAME WAS REJECTED BY AURORA

Here, Plaintiffs attempted a conventional sale that would have paid off any

amount purportedly due under the loan.  Appellant O'Brien notified Aurora that he

had a purchaser of the property and intended to pay off any amount purportedly

due under the loan upon proof of the identity of such person entitled to enforce the

---

[76] Id.

[77] In *Dimock*, *Little* and the instant case there was no wording in the deed of trust or trustee's deed that the recitations contained in the trustee's deed would be conclusively presumed.  See Aplt. ER at 208 (deed of trust - rebuttable presumption language) & 237-38 (trustee's deed - no presumption language)

note.[78]  Appellant Jacobsen also notified Aurora, through its agent, Cal-Western, that proof of identity of the person entitled to enforce the note was needed.[79]

Moreover, Aurora admits it received written notification of such a tender that would have paid off any amount due the purported lender herein by its servicing notes in which it was written: "…RECEIVED FAX FROM BORROWER DATED 9/6/11 REQUESTING POSTPONEMENT OF SALE AS HE IS IN THE PROCESS OF SELLING THE PROPERTY AND HAS A BUYER WHO IS ABOUT TO CLOSE ON LOAN…"[80]  It is clear Appellant Jacobsen had a loan commitment from a lender in an amount sufficient to pay off any amount due under the purported loan herein - $1,525,000.00.[81]  However, rather than giving Appellant O'Brien pay off information, Aurora opted instead to proceed to foreclosure sale a week later.[82]

Similarly, the plaintiffs in *Winnett v. Roberts* 179 Cal.App.3d 909 (1986), tendered the loan amount to save their home from foreclosure. Likewise, such tender was refused by the lender and the lender proceeded to foreclosure sale. In *Winnett,* the plaintiffs filed suit to enjoin the foreclosure sale and lost when the defendant"s summary judgment motion was granted.

---

[78] Aplt. ER at 68.
[79] Aplt. ER at 495-97, 500.
[80] Aplt. ER at 310.
[81] Aplt. ER at 489.
[82] Aplt. ER at 434.

However, the Court of Appeals reversed that judgment, ordering the trial court to cancel the trustee's sale, the trustee's deed and the deed of trust and to quiet plaintiffs' title as against defendants. The *Winnett* Court held that the lender's rejection of the tender made by plaintiffs resulted in there being no valid lien against the property and required the reconveyance of the property back to plaintiffs free and clear of the lender's purported lien.[83]

The same result is called for here since Appellant O'Brien tendered the amount of the purported loan and that tender was refused by Aurora. Appellant O'Brien had the right to redeem his property up until the moment of the sale.[84] Aurora's failure to respond to the request for a demand of Appellant O'Brien violated that right and not only obviated the need for tender, but also redeemed any purported lien that may have affected the property.[85]

## VII.  APPELLANTS ARE NOT REQUIRED TO SHOW PREJUDICE RESULTING FROM THE VOID FORECLOSURE SALE

After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's

---

[83] *Winnett v. Roberts*, 179 Cal.App.3d at 922; see, also, Cal. Code Civ. Proc. § 2941.
[84] Cal. Civ. Code §§ 2903 & 2904.
[85] Cal. Civ. Code §§ 2904 & 2905.

sale.[86]  Generally, a challenge to the validity of a trustee's sale is an attempt to

have the sale set aside and to have the title restored.[87]  Where a foreclosure sale has

been improperly or unlawfully conducted, a court of equity may properly set it

aside.[88]  Here, a purported beneficiary who in actuality is not a beneficiary initiated

and completed a foreclosure sale.  Unlike the litigant in the case law cited by

Aurora, Appellants do not complain merely of a procedural irregularity dehors the

foreclosure sale for which prejudice must be shown to have the foreclosure sale set

aside.  Rather, Appellants complain that the prerequisites of a proper statutory

nonjudicial foreclosure did not exist.

Thus, Aurora's case law is distinguishable in that regard and Appellants are

not required to show prejudice in order to set the foreclosure sale aside.  To prevail

on their wrongful foreclosure cause of action, it is sufficient for Appellants to show

that there was an irregularity in the foreclosure sale that lead to an inadequate

price.  Here, Aurora was not a proper beneficiary, as required under the nonjudicial

---

[86] *Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 209-210.

[87] *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 (Onofrio), citing 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trusts & Mortgages, § 9.154, pp. 507-508.

[88] "'It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.'" *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098 (Lo), quoting *Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248.

foreclosure statute and the sales price was effectively $0.00 due to Aurora's credit bid.

## VIII.  APPELLANTS WERE PREJUDICED BY THE IRREGULARITY OF THE FORECLOSURE SALE

Here, Appellants were prejudiced because the property would not have been lost to foreclosure if Aurora had made the original note available for inspection because Appellant Jacobsen had a loan commitment contingent upon proof of the identity of the creditor entitled to a payoff.[89]  Aurora knew about Appellant O'Brien's request to inspect the original note to confirm the proper creditor to be paid off, but, Aurora proceeded with the foreclosure sale despite such knowledge.[90] Due to Aurora's refusal to provide proof of the creditor, Appellant O'Brien lost the opportunity to sell the property pre-foreclosure on a loan that would have paid off any amount due the creditor which would have prevented the foreclosure from occurring.[91]  At the same time, Appellant Jacobsen lost the opportunity to purchase the property from Appellant O'Brien.[92]

---

[89] Aplt. ER at 67-74.
[90] Aurora's servicing notes confirm Appellant O'Brien's inquiry regarding who the holder of the note was, noting "RECEIVED LETTER FROM BORROWER DATED 8/29/11 ASKING AURORA IF THEY ARE THE HOLDER OF THE NOTE, ALONG WITH OTHER QUESTIONS RELATING TO LOAN."  Aplt. ER at 310.
[91] Aplt. ER at 66 & 72.
[92] Id.

Additionally, Appellant O'Brien is subject to an action for damages from the real holder of the note. Put a different way, the person obligated to pay a promissory note may not be entitled to credit for a payment made to a holder of the note if the payment is delivered to someone who is not the "person entitled to enforce" the note, whereas a payment made to the "person entitled to enforce" the note is credited against the payor's obligation under the note, even if the "owner" of the note does not receive the funds.[93] When an obligation is owed to a creditor, the usual rule is that performance must be tendered to the creditor, or to one of the joint creditors, or to another person authorized by the creditor to accept payment.[94]

Upon a tender of payment, the obligation is deemed satisfied and interest ceases on the sum paid.[95] The key issue in such cases is whether the performance is tendered to the correct "creditor" or collection agent. The risk of rendering performance to the wrong party, if the obligation has been assigned, usually falls on the person tendering performance,[96] even though the assignee seeking to collect on the debt bears the burden of proving a valid assignment to it—which includes

---

[93] Cal. U. Com. Code, §§ 3412, 3602, subd. (a). *In re Veal*, 450 B.R. 897, 910-911 (B.A.P. 9th Cir. 2011).

[94] Cal. Civ. Code, §1488.

[95] Cal. Civ. Code, §1504.

[96] Cal. U. Com. Code, §3418, subd. (b). See *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1496 (1987) (persons who had an interest in proceeds of note could sue assignee who received payment, but their potential rights were not a defense to the obligor's obligation to satisfy the note). See also *Rodgers v. Peckham*, 120 Cal. 238, 242 (1898) (payment made with notice that another holds the note or mortgage is at the risk of the payor).

the burden of proving that the purported assignor had the authority, capacity and power to assign the interest claimed.[97]  If the thing transferred is a non-negotiable right to payment of money, the transfer alone is not notice to the obligor of the change in the party entitled to payment, so as to "invalidate" payments made to the transferor, but the obligor who begins making payments to the transferee is clearly at risk if the transferee has not in fact succeeded to rights of payment.[98]

Contrary to the contentions of Aurora,[99] that a foreclosure of the collateral has been completed by one not entitled to enforce the note does not extinguish any liability Appellant O'Brien may still have to the person entitled to enforce the note. Thus, Appellant O'Brien has been prejudiced by not only by losing his property to foreclosure to one not entitled to enforce the note, but also by continuing to be subject to a purported debt that was not extinguished thereby.  Appellant Jacobsen, on the other hand, has been prejudiced by having his attempt to purchase the property pre-foreclosure frustrated by Aurora not revealing the identity of the note holder.

Finally, since the note and deed of trust are void, all of the nonjudicial foreclosure documents filed in the land records of Contra Costa County are void as

---

[97] See *Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242-1243 (1987).
[98] See Cal. Civ. Code, § 955.
[99] Aurora's Answering Brief at 35, 38.

well, including the trustee's sale.  Consequently, they are all clouds on Appellants' title to the property.

## IX.   THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF AURORA ON APPELLANTS' QUIET TITLE CAUSE OF ACTION

Aurora suggests the failure of Appellants to pay the loan balance dooms their claim to quiet title because Appellants have consequently failed to prove their title is superior to Aurora's.[100]  However, such a contention rests upon Aurora's fundamental contention, which is not supported by the record, that any loan affecting the property that was not satisfied inured to their benefit.  Here, Appellants sought quiet title against Aurora,[101] not the actual person entitled to enforce the note.

There is no requirement under California law that a party seeking quiet title against a particular party must prove that encumberances in favor of a different party were satisfied in order to satisfy the superior title element of a quiet title cause of action.  In fact the quiet title statute, by its very terms, requires only that a party seeking quiet title prove superior title as against a particular named defendant.[102]  Here, Appellants sued only Aurora for quiet title.[103]  Absent Aurora

---

[100] Aurora's Answering Brief at 15, 28.
[101] Aplt. ER at 455.
[102] Cal. Code Civ. Proc. § 764.010 ("The court shall examine into and <u>determine the plaintiff's title against the claims of all the defendants.</u> The court shall not enter

showing it is entitled to enforce the note, the contention that Appellants must satisfy the conditions of the loan to show Appellants have not produced sufficient evidence of title to the property superior to the claim to title of Aurora is unavailing.

That there may be an unknown person entitled to enforce the note that has not been named in, and served with, Appellants' complaint does not require Appellants to show superior title vis a vis such a person in order to prevail against Aurora who has failed to show it is entitled to enforce the note and, consequently, failed to show it was authorized to invoke the power of sale in the deed of trust.

Here, there is undisputed evidence in the record that proves the chain of title to Appellants.[104]  In contrast, Aurora has produced copies of a note and deed of trust to which it was not a party,[105] a purported assignment of the deed of trust[106] and a purported trustee's deed[107] in its favor.  As previously discussed, however,

---

judgment by default but shall in all cases require evidence of plaintiff's title <u>and hear such evidence as may be offered respecting the claims of any of the defendants</u>" (emphasis added)).  See also Cal. Code Civ. Proc. § 762.060 (Requiring all unknown defendants – such as the person entitled to enforce the note in the instant case – to be sued as a person "unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto").  Here, Appellants only sued DOES for damages – not quiet title.  Aplt. ER at 449.

[103] Aplt. ER at 455.

[104] Aplt. ER at 464-470, 498-99, 501-05.

[105] Aplt. ER at 186-218.

[106] Aplt. ER at 219-21.

[107] Aplt. ER at 236-39.

the assignment of the deed of trust is insufficient to show Aurora was entitled to enforce the note and, thus, foreclose upon the property. Likewise, Aurora has failed to show it was a holder of the note.[108] Regardless of whether or not Aurora was authorized by the holder of the note to foreclose on its behalf, it is clear Aurora could not acquire title at the trustee's sale without paying cash for the same. Now that Aurora has finally admitted it made a credit bid for the property,[109] it is apparent that Appellants' title is superior to that of Aurora's.

## X. GENUINE ISSUES OF MATERIAL FACT EXISTED WITH REGARD TO APPELLANT O'BRIEN'S COMMON COUNT CAUSE OF ACTION PRECLUDING SUMMARY JUDGMENT

Here, the undisputed facts show Aurora collected payments from Appellant O'Brien.[110] For the first time on appeal, Aurora asserts it was entitled to those payments – in its own right – because it is the holder of the note.[111] In support of such a contention, Aurora points to a copy of the note[112] and cites to a provision of the UCC that a holder of a negotiable instrument means the one in possession of

---

[108] Aplt. ER at 181, 237
[109] Aurora's Answering Brief at 34, 39-40.
[110] Aplt. ER at 179 (Aurora began servicing the loan on March 1, 2007); Aplt. ER at 181 (O'Brien purportedly stopped paying when the October, 2010 payment was due). Thus, according to Aurora, O'Brien made 3 ½ years of monthly payments to Aurora, or 42 payments in total.
[111] Aurora's Answering Brief at 39-40.
[112] There was no hearing on the motions for summary judgment. However, there is also no indication in the record that Aurora intended to produce the original note at the hearing.

it.[113]  However, as explained above, there is no evidence in the record that Aurora possessed the note during foreclosure.

While asserting the right to loan payments as a person entitled to enforce the note for the first time on appeal, rather than as a servicer as was contended below, Aurora has not shown itself to be a holder entitled to enforce the note.  Likewise, Aurora has not produced evidence that it is the agent of a person entitled to enforce the note and that it is authorized to collect payments on behalf of the person entitled to enforce the note.

In short, the evidence in the record shows that Appellant O'Brien made payments to Aurora, but fails to show that Aurora was entitled to receive them either as a person entitled to enforce the note or as a collection agent for the person entitled to enforce the note.

Consequently, there was a genuine issue of material fact with regard to Aurora's right to receive the payments from Appellant O'Brien and the lower court was in error when it granted Aurora's cross motion for summary judgment on Appellants' common count cause of action.

---

[113] Aurora's Answering Brief at 39-40.

## XI.  REGARDLESS OF WHETHER OR NOT THE NONJUDICIAL FORECLOSURE STATUTE ALLOWS A CREDIT BID TO BE PLACED AT A FORECLOSURE SALE, THE DEED OF TRUST AND NOTICE OF SALE CONTROLS THE STATUTE

Here, Aurora contends it was permitted to place a credit bid at the trustee's sale simply because California's nonjudicial foreclosure statute allows it.[114] However, it is uncontested that the deed of trust and the notice of sale restrict a bid to cash or check.[115]

Simply because the statute may permit certain types of bids that may be made at a trustee's sale, does not mean that the parties to a deed of trust may not restrict the bidding procedures to something less than the statute allows.  If otherwise lawful, if the statute conflicts with the deed of trust, the deed of trust controls.[116]

Here, the deed of trust and notice of sale only provided for bids at the trustee's sale to be made in cash or check.[117]  In neither document is a credit bid allowed.[118]  Consequently, Aurora's credit bid was invalid and Cal-Western's[119]

---

[114] Cal. Civ. Code § 2924h(b).

[115] Aplt. ER at 208, 338.

[116] *Bank of America, N.A. v. La Jolla Group II*, 129 Cal.App.4th 706 (2005).

[117] Aplt. ER at 208, 338.

[118] Id.

[119] After asserting consistently below that Aurora made a proper credit bid at the trustee's sale (Aplt. ER at 377, 405), Cal-Western now inexplicably reverses itself in its Response Brief, stating Aurora made its bid in cash.  (Cal-Western's Response Brief at 6, 7 (footnote)).

acceptance of it was improper and evidence upon which a reasonable juror could find against Cal-Western for wrongful foreclosure.[120]

## XII. APPELLANTS DO NOT LACK STANDING TO BRING THIS APPEAL DESPITE TITLE TO THE PROPERTY BEING DEEDED TO THEIR SUCCESSOR

Although Aurora contends quiet title cannot be granted Appellants[121] and Cal-Western questions Appellants' standing to seek relief generally[122] due to Appellant Jacobsen deeding his interest in the property to Virgin Properties, LLC, it is clear that Appellants not only have standing to continue to prosecute this action[123] but that Appellants' successor in interest will be bound by this Court's decision as a matter of law, despite not being formally substituted in as a party.[124]

---

[120] As a common agent, the trustee <u>must represent the interests of both parties</u>. The duties of the trustee are limited to the express terms of the deed of trust, the applicable statutes, and the instructions of the parties. In fact, the trustee has <u>no duty to take any action except</u> on the express instructions of the parties, or <u>as expressly provided for in the Deed of Trust</u> (emphasis added)." Miller & Starr, California Real Estate, (3d Ed.), § 10:4.

[121] Aurora's Answering Brief at 18.

[122] Cal-Western's Response Brief at 22.

[123] FRCP, Rule 25(c)(" "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.").

[124] *Topanga Corp. v. Gentile*, 219 Cal.App.2d 274, 278 (1963)( "One who succeeds to the interests in the property or other subject of the action after its commencement is bound by the judgment with respect to those interests in the same manner as if he were a party.").

In fact, Rule 25 was enacted to facilitate the continuation of a case even after one or more parties have transferred their interest(s) to another.[125]

## XIII. THE LOWER COURT ERRED WHEN IT GRANTED CAL-WESTERN'S RULE 12(B)(6) MOTION WITHOUT LEAVE TO AMEND

The lower court was in error when it granted Cal-Western's Rule 12(b)(6) motion because Cal-Western failed in its duties to conduct the foreclosure sale in accordance with California's nonjudicial foreclosure scheme by allowing a non-beneficiary to foreclose and also by allowing that non-beneficiary to credit bid.

It is undisputed that a trustee under a deed of trust must conduct a foreclosure in a way that is in compliance with Cal. Civ. Code § 2924, et. seq.  A prerequisite to a proper nonjudicial foreclosure is that there must be a beneficiary entitled to enforce the note by sale of the property which secures it who directs the trustee to file a notice of default.[126]  However, as indicated above, Aurora was not a proper beneficiary.  Cal-Western failed in its duties to comply with the terms of the

---

[125] *Matter of Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981)(Rule 25(c) "is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.").

[126] Cal. Civ. Code § 2924.  *I. E. Associates v. Safeco Title Ins. Co.*, supra, 39 Cal.3d 281, 287. ("The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.").

deed of trust.[127]  The deed of trust authorized the trustee to commence the foreclosure only after a default and only after the lender directs the trustee to file a notice of default.[128]

Here, Cal-Western relied only upon Aurora's word that it was a beneficiary entitled to enforce the note.  That is not enough to comply with its duties under the deed of trust.  Cal-Western should have confirmed that the original note was in Aurora's possession by inspecting it, or should have determined Aurora was otherwise entitled to enforce the note.  However, there is nothing in the record suggesting Cal-Western did so.  In fact, Cal-Western believes it had no duty to look beyond the corporate assignment of deed of trust to determine whether Aurora had was an authorized agent entitled to commence foreclosure on behalf of the beneficiary or entitled to place a credit bid at the trustee's sale as such beneficiary.[129]  Hence the sum total of its duty to the trustor to prevent wrongful loss of the property:  Cal-Western just took Aurora's word for it.[130]

Moreover, Cal-Western was constrained by the deed of trust's directions regarding the manner in which the foreclosure should proceed.  Cal-Western had a

---

[127] Aplt. ER at 208 (deed of trust – bidding must be in accordance with the notice of sale and only the lender/person entitled to enforce note may declare default and cause trustee to file notice of default).  Aplt. ER at 338 (notice of sale – only bids in cash or check allowed).

[128] Aplt. ER at 208.

[129] Cal-Western's Response Brief at 20.

[130] See generally Cal-Western's Response Brief.  Cal-Western does not explain why they thought Aurora was a proper beneficiary entitled to enforce the note.  Id.

duty to comply with those terms. Among those terms was the requirement that a bid may only be made in accordance with the notice of sale, which only provided for bids in cash or check at the trustee's sale. However, Cal-Western breached its duty to the trustor by accepting Aurora's credit bid at the trustee's sale.

But for Cal-Western's credit bid, Appellants might still be in possession of the property without the cloud on title caused by the trustee's deed Cal-Western wrongfully issued to Aurora.

## XIV. CONCLUSION

In conclusion, the lower court's judgment should be reversed.


Dated:        April 22, 2013            LAW OFFICES OF MICHAEL YESK

                                By:    /s/ *Michael Yesk*
                                       Michael Yesk, attorney for
                                       Michael T. O'Brien & Robert E. Jacobsen,
                                       Appellants

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)

The undersigned hereby certifies that the foregoing Appellants' Reply Brief complies with the type/volume limitations of FRAP 32(a)(7)(B)(i).

According to Microsoft Word, this brief contains 9,984 words. A motion to file an oversized brief is filed with this brief.

This brief contains 14 point proportionally spaced type-face.

Consistent with FRAP 32(a)(4), this brief's top, bottom and side margins are one inch wide.

Dated:       April 22, 2013          LAW OFFICES OF MICHAEL YESK


                              By        /s/   *Michael Yesk*_____
                                    Michael Yesk, attorney for
                                    Michael T. O'Brien & Robert E. Jacobsen,
                                    Appellants


## STATEMENT OF RELATED CASES

Neither Michael T. O'Brien nor Robert E. Jacobsen are aware of any related cases pending in this Court, as that term is defined in Ninth Circuit Rule 28-2.6.


Dated:       April 22, 2013          LAW OFFICES OF MICHAEL YESK


                              By        /s/   *Michael Yesk*_____
                                    Michael Yesk, attorney for
                                    Michael T. O'Brien & Robert E. Jacobsen,
                                    Appellants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on April 22, 2013.  I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

Dated:  April 22, 2013                     Law Offices of Michael Yesk


By:     __*/s/ Michael Yesk*_____
        Michael Yesk, attorney for
        Michael T. O'Brien and
        Robert E. Jacobsen, Appellants